UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| NATHAN A. GOFF, | ) |
|          Plaintiff, | ) |
|          v. | ) No. 2:20-cv-00019-JPH-MJD |
| BRIAN BOURBEAU,<br>CITY OF TERRE HAUTE,<br>VIGO COUNTY, | ) |
|          Defendants. | ) |

**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS
BRIAN BOURBEAU AND CITY OF TERRE HAUTE**

Nathan Goff alleges that Detective Brian Bourbeau used excessive force on him during his arrest in violation of the Fourth Amendment. He also brings claims for assault and battery and negligence during that arrest against the City of Terre Haute and Vigo County. For the reasons discussed below, the Court **GRANTS** summary judgment in favor of Detective Bourbeau and the City. Dkt. [33]. Vigo County's motion for summary judgment on claims based on injuries that Mr. Goff alleges to have sustained at the Vigo County Jail is **DENIED AS MOOT**. Dkt. [31]. The Court gives notice pursuant to Federal Rule of Civil Procedure 56(f) of its intent to grant summary judgment for Vigo County on Mr. Goff's Indiana tort claims for injuries he sustained during his arrest.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts,

and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Background

### A. Vigo County Drug Task Force

Detective Bourbeau is an officer of the Terre Haute Police Department and a member of the Vigo County Drug Task Force ("VCDTF"). Dkt. 33-4, para. 5. VCDTF investigates drug cases in Vigo County and is comprised of officers from the Terre Haute Police Department, the Vigo County Sheriff's Department, and the Vigo County Prosecutor's Office. *Id.* at 6.

### B. Mr. Goff's Arrest

On July 17, 2019, Detective Bourbeau and other VCDTF officers served an arrest warrant on Mr. Goff following his escape from a work release facility several months earlier. Dkt. 33-1, pp. 15-16; dkt. 33-4, paras. 7-10. Mr. Goff

was serving an executed sentence for dealing methamphetamine at the time of his escape. Dkt. 33-4, para. 7; Indiana Cause No. 84D01-1211-FB-3538.

Shortly after midnight, VCDTF officers knocked and announced their presence on the door of an apartment Mr. Goff shared with his girlfriend. Dkt. 33-4, para. 12. When Mr. Goff heard knocking and yelling at the door, he dumped a plastic bag of methamphetamine in the toilet, jumped out of the apartment's bathroom window, and stepped onto a ladder that was leaning against the back of the building. Dkt. 33-3, p. 22. Mr. Goff had placed the ladder there in case he needed to "leave quickly." *Id.* Mr. Goff swung the ladder from the apartment building to a nearby privacy fence, climbed over the privacy fence, and continued to flee on foot. *Id.* at 22, 38.

Mr. Goff testified that after he hopped the fence, he realized that the police were chasing him and immediately dropped to his knees and placed his hands behind his head.[1] *Id.* at 22-23. Then, a police K-9 caught up to him and bit him on the neck. *Id.* at 23. As the police K-9 was biting him, Mr. Goff saw the tip of a boot approach his face. *Id.* The next thing he remembers is waking up in a hospital. *Id.* His jaw was fractured in three places and was wired shut for the next 52 days. *Id.* at 46. Mr. Goff believes that a VCDTF officer kicked him in the face, but he has "no idea" who the officer was. *Id.* at 43.

---

[1] This statement contradicts Mr. Goff's previous testimony at his guilty plea hearing for distribution of methamphetamine. *See* dkt. 33-1, p. 8, para. 18(e)-(f) (guilty plea agreement); dkt. 33-2, p. 9 (transcript of guilty plea hearing); *United States v. Goff*, Case No. 2:19-CR-025-JPH-CMM. At the guilty plea hearing, Mr. Goff admitted that he "resisted the detectives' efforts to handcuff him" after the police dog had caught up to him, and that he later "apologized for fighting with the officer and stated that he had hurt himself." *Id.*

According to Detective Bourbeau, Mr. Goff forcibly resisted arrest after he was released by the police K-9. He provides the following description of his efforts to chase after and arrest Mr. Goff:

> After removing the plastic bag [of methamphetamine] from the toilet, I went to exit the apartment to pursue the Plaintiff. While exiting the apartment, I observed a holstered handgun in plain view on an end table in the apartment.
>
> I eventually caught up with the Plaintiff, who had run a considerable distance from the back of the apartment and had gone over several fences. At the time I arrived Detective Larry Hopper and his police dog were already attempting to subdue the Plaintiff. The dog was biting the Plaintiff, who was resisting and refusing to show his arms or hands.
>
> The police dog was commanded to release the Plaintiff by Detective Larry Hopper and I stepped on the plaintiff's arms to prevent him from removing any unknown items or weapons from his waistband. I also attempted to place the Plaintiff into custody and the Plaintiff resisted me and continued to reach toward his waistband with his hands.
>
> A struggle ensued between the Plaintiff and me. As I was concerned that the Plaintiff had a gun or other weapon in his waistband or pants, I struck the Plaintiff numerous times on his torso and body until the Plaintiff eventually complied with my commands, removed his hands from underneath him, and was handcuffed. Also involved in the struggle were Sergeant Charles Burress and Detective Larry Hopper.
>
> At no point did I knowingly kick or in any way strike the Plaintiff's head or face.

Dkt. 33-4, paras. 16-20.

**C. Notice of Tort Claim**

Terre Haute has submitted an affidavit from Molly Meeks, a paralegal employed by the City's legal department. Dkt. 33-5. According to Ms. Meeks, "the City of Terre Haute has not received any Tort Claim Notice from Nathan Goff, or

4

any attorney or representative acting on his behalf, regarding any of the allegations he has made in his complaint." *Id.* at para. 4. Ms. Meeks has "searched the records of the City of Terre Haute's Legal Department, and cannot find any document which indicates that it was written by or on behalf of the Plaintiff, Nathan Goff, or any attorney or representative on his behalf, and referencing the matters set forth with his complaint, prior to the filing of this lawsuit." *Id.* at para. 5.

Mr. Goff has submitted a handwritten tort claim notice. Dkt. 35-7. The notice states that a "police officer of Vigo County . . . kick[ed] plaintiff in the face, during a confrontation, while the K-9 unit had his dog also involved, that resulted in a bite. Jaw fractured in 3 places, constant pain." *Id.* at 2. The tort claim notice is dated November 15, 2019, and states, "I mailed a true and correct copy to the Indiana Attorney General, and the Vigo Chief Prosecutor, and the Clerk, by US mail." *Id.* at 3.

In his deposition, Mr. Goff testified that he had served a tort claim notice on Terre Haute and Detective Bourbeau. Dkt. 31-1, pp. 60-61. He then clarified that he did not know that the City of Terre Haute and Vigo County are separate entities. *Id.* at 63. He believes his counsel may have served a tort claim notice on Detective Bourbeau or the City, but no evidence supports that belief. *Id.*

### III. Discussion

**A. Fourth Amendment Claim against Detective Bourbeau**

    **1. Legal Standard**

A claim for excessive force during an arrest invokes the Fourth Amendment's protection against unreasonable seizures. *Turner v. City of Champlain*, 979 F.3d 563, 567 (7th Cir. 2020). The reasonableness standard is objective, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The *Graham* standard is fact-intensive, asking whether each use of force was reasonable under the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

    **2. Analysis**

        **a. Kick to Mr. Goff's face**

Mr. Goff testified that he was kicked in the face by an unidentified officer as a police K-9 was biting him on the neck. Dkt. 31-1, p. 23. Mr. Goff has "no idea" if the officer who kicked him was Detective Bourbeau, *id.* at 43, 59, yet he is the only person Mr. Goff chose to sue for his broken jaw. Dkt. 17 at 3. Detective Bourbeau states that he did not "knowingly kick or in any way strike [Mr. Goff's] head or face." Dkt. 33-4, para. 20.

Under § 1983, Detective Bourbeau cannot be individually liable for the actions of others. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)

("Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation.") (cleaned up). Even if the jury were to accept Mr. Goff's testimony that *someone* kicked him in the face and broke his jaw (he has designated no medical evidence in support) there is no evidence that Detective Bourbeau was that person. Indeed, Mr. Goff has testified that he has "no idea" who kicked him because he was being bitten by a dog at the time and then, after "see[ing] the tip of a boot come at [him]," woke up in the hospital. Dkt. 33-3, p. 43.

The Seventh Circuit has "recognize[d] potential tension between § 1983's individual-responsibility requirement and factual scenarios of the kind present here" because it "may be problematic to require plaintiffs to specifically identify which officer" caused an injury that a plaintiff did not observe. *Colbert*, 851 F.3d at 657–58. But plaintiffs have the option to "includ[e] in their complaint allegations of misconduct that are unaffected at summary judgment by the inability to observe the [alleged unlawful conduct]." *Id.* (listing examples).[2] Here, Mr. Goff did not do so. His amended complaint—filed after counsel appeared on his behalf—straightforwardly alleges that "Officer Bourbeau came running up and willfully and maliciously kicked Mr. Goff in the face." Dkt. 17 at 4, 6–8. And his summary judgment brief repeats that it was Detective Bourbeau who kicked

---

[2] The various options for litigating claims when the plaintiff is not sure of the identity of the tortfeasor are plainly set forth in *Colbert*. 851 F.3d at 685. They should not surprise Mr. Goff as the Court cited *Colbert* in its first screening order to explain that § 1983 "requires personal involvement in the alleged constitutional deprivation." Dkt. 10 at 2.

7

him. Dkt. 35 at 5, 9. Mr. Goff, however, unequivocally testified that he does not know who kicked him:

```
16   Q      All right.  You say you saw the tip of a boot come
17          at you.  What -- you mean you were kicked?
18   A      I was kicked in the face, yes.
19   Q      And whose boot was it that kicked you?
20   A      I couldn't tell you that.
21   Q      All right.  So you have no idea who kicked you?
22   A      Well, I mean, other than later -- at the time of the
23          incident?
24   Q      Yes.
25   A      No idea.

1    Q      Now, and then from that point on you have no
2           recollection or memory of what happened?
3    A      I woke up in the hospital, sir.
4    Q      Okay.  And as we sit here today based on your own
5           personal memory, you cannot testify who kicked you?
6    A      No.
```

'Dkt. 33-3 at 14-15 (Goff Dep. p. 43-44); dkt. 35 at 8–10. Without designated evidence of Mr. Bourbeau's personal involvement, "no jury could reasonably infer" that he kicked Mr. Goff in the face and caused the injury to his jaw. *Colbert*, 851 F.3d at 658 (affirming summary judgment because "no jury could reasonably conclude that these particular defendants had any individual involvement").

8

Mr. Goff nevertheless suggests that circumstantial evidence—like officers' not mentioning his facial injuries in their reports—allows a reasonable jury to find that it was Detective Bourbeau who kicked him. Dkt. 35 at 9–10 (discussing "illogical" and "logical" inferences). But in addition to being speculative, the inferences that Mr. Goff seeks would support only that he *was kicked*—not *who kicked him*. Merely "assuming [that] one of the" officers present "must have been responsible for the alleged misconduct 'is not good enough to fend off summary judgment.'" *Colbert*, 851 F.3d at 649.

Mr. Bourbeau is therefore entitled to summary judgment on this claim because Mr. Goff "is unable to satisfy § 1983's personal-responsibility requirement at summary judgment." *Id.*[3]

### b. Force to subdue Mr. Goff

'While Mr. Goff has no recollection of what happened after he was kicked in the face, dkt. 33-1, p. 23, Detective Bourbeau's sworn affidavit addressed the force used to subdue Mr. Goff. Detective Bourbeau testifies that he and Detective Hopper tried to arrest Mr. Goff after the police K-9 released him. Dkt. 33-4, paras. 18-19. At that point, Detective Bourbeau stepped on Mr. Goff's arms "to prevent him from removing any unknown items or weapons from his waistband," but Mr. Goff "continued to resist and continued to reach toward his waistband with his hands." *Id.* at 18. Detective Bourbeau "was concerned that Mr. Goff had a gun or other weapon in his waistband or pants," so he struck Mr. Goff

---

[3] Mr. Goff does not argue that Detective Bourbeau is liable for injuries sustained from Detective Hopper's police K-9. Dkt. 35 at 8–10. If he had, Detective Bourbeau would be entitled to summary judgment on that claim for the same reason.

9

"numerous times on his torso and body until Mr. Goff eventually complied with his commands, removed his hands from underneath himself, and was handcuffed." *Id.* at para. 19 (cleaned up).

The Seventh Circuit has explained that "[u]nlike when someone is passively refusing to move or follow lawful commands, the police may use significant force to subdue someone who is actively resisting lawful detention." *Tyson*, 979 F.3d at 569; (citing *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013) (arm-bar and wrist-lock techniques that broke protective detainee's arm were not excessive because she was actively resisting attempts to place her into an ambulance); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592-93 (7th Cir. 1997) (officers could tackle, handcuff, and hobble a detainee who continued to struggle and kick throughout; "amount of force that is justified increased as the confrontation escalates").

Also, Detective Bourbeau reasonably believed that Mr. Goff had a firearm on his person, and his efforts to neutralize the threat to officer safety were objectively reasonable. *See Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (instructing courts to "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

Finally, the force Detective Bourbeau used when he stepped on Mr. Goff's arms and struck Mr. Goff's torso did not cause any injuries. *See* dkt. 33-1, pp.

46-47 (Mr. Goff testifying that he did not suffer any injuries other than his fractured jaw and dog bites).

No reasonable jury could conclude that the force Detective Bourbeau used to subdue Mr. Goff after he was released by the police K-9 was excessive.

Detective Bourbeau's motion for summary judgment is therefore **GRANTED**.

### B. Tort Claims against City of Terre Haute

Mr. Goff is suing the City of Terre Haute under the Indiana Tort Claims Act ("ITCA") for assault, battery, and negligence for injuries he sustained during his arrest. *See* dkt. 16 (screening order). The City of Terre Haute claims it is entitled to summary judgment because Mr. Goff did not serve a notice of tort claim as required by the ICTA. Dkt. 34, pp. 16-17.

The ITCA provides "that a tort claim against a government entity is barred unless the claimant provides the entity with timely notice of the claim." *Murphy v. Indiana State University*, 153 N.E.3d 311, 317 (Ind. Ct. App. 2020) (citing Ind. Code § 34-13-3). The notice "must describe in a short and plain statement the facts on which the claim is based," including "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice," Ind. Code § 34-13-3-10, and be in writing and delivered in person or by registered or certified mail, Ind. Code § 34-13-3-12. "The notice provision [of the ITCA] is . . . a procedural precedent which must be fulfilled

11

before filing suit." *Weaver v. Elkhart Community School Corporation*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018).

Mr. Goff's tort claim notice was not served on the City of Terre Haute and, therefore, does not satisfy the notice requirement of the ITCA. *See* dkt. 35-7 (tort claim notice served on the Indiana Attorney General and Vigo County Prosecutor).

Mr. Goff argues that this failure should be excused because his tort claim notice substantially complied with the requirements of the ITCA. Dkt. 35, pp. 12-15. He characterizes his failure to serve his tort claim notice on the City of Terre Haute as a "technical violation" that should be excused. *Id.* at 12 (citing *City of Tipton v. Baxter*, 593 N.E.2d 1280, 1282 (Ind. Ct. App. 1992)). He also argues that his tort claim notice was served on the City as part of his initial disclosures during discovery, "so they certainly had notice of the claim by that time." Dkt. 35, pp. 14-15.

"Substantial compliance with the [ITCA's] notice requirements is sufficient when the purpose of the notice requirement is satisfied." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013). "The purpose of the Tort Claims Act's notice requirements is to provide the political subdivision the opportunity to investigate the facts surrounding an accident so that it may determine its liability and prepare a defense." *Murphy*, 153 N.E.3d at 318 (cleaned up). In general, a notice that: (1) is filed within the 180-day period, (2) informs the governmental entity of the claimant's intent to make a claim, and (3) contains sufficient information which reasonably affords the governmental entity an opportunity to promptly

12

investigate the claim, satisfies the purpose of the statute and will be held to substantially comply with the Tort Claims Act. *Id.*

In *Murphy*, the Indiana Court of Appeals rejected a substantial compliance argument similar to the argument that Mr. Goff makes here. The plaintiff served her tort claim notice on the Indiana Attorney General rather than the defendant, Indiana State University ("ISU"). *See* 153 N.E.3d at 318-21. That court held that serving a tort claim notice on the Indiana Attorney General was not substantial compliance because it did not inform ISU of the plaintiff's intent to make a claim and provide ISU an opportunity to "promptly investigate the surrounding circumstances." *Id.* at 319. The Indiana Court of Appeals has thus determined that serving a tort claim notice on the Indiana Attorney General is not substantial compliance, and Mr. Goff's similar error of serving his tort claim notice on the Indiana Attorney General and the Vigo County Prosecutor, rather than on the City of Terre Haute, also fails to meet the requirements for substantial compliance. *See id.* at 318 ("Murphy, however, did not provide notice to ISU as required . . . rather, Murphy provided notice of her claim only to the Attorney General.").

Mr. Goff's other argument, that the City of Terre Haute received his tort claim notice as part of his initial disclosures, fails as well. The purpose of filing a notice of tort claim is to provide the governmental entity with an opportunity to investigate official misconduct *before* the plaintiff files a lawsuit. Providing notice *after* the lawsuit is already underway and proceeding through discovery does not satisfy this purpose. *See Weaver*, 95 N.E.3d at 101 (holding that serving

13

a tort claim notice on a government entity is a "procedural precedent which must be fulfilled before filing suit.").

Finally, Mr. Goff's tort claim notice does not state that a Terre Haute employee was responsible for his injuries. According to the tort claim notice, Mr. Goff was injured by a "police officer of Vigo County." Dkt. 35-7. The City of Terre Haute would have no reason to investigate a tort claim against an employee of a different political subdivision. Thus, even Mr. Goff had served this tort claim notice on the City of Terre Haute, it is doubtful that it would have satisfied the purpose of the ITCA's notice requirement.

There are no material factual disputes precluding summary judgment for the City of Terre Haute. *See Murphy*, 153 N.E.3d at 317 ("The question of compliance [with ITCA's notice provision] is not a question of fact for the jury but ultimately a legal determination to be made by the court.") Accordingly, the City of Terre Haute's motion for summary judgment is **GRANTED**.

### C. Tort Claims against Vigo County

Mr. Goff is proceeding on tort claims against Vigo County on the theory that Vigo County's police officers injured him during his arrest. *See* dkt. 16, p. 3. His other claims against Vigo County, which alleged that he was denied a liquid diet during his confinement at Vigo County Jail, were dismissed in the Order screening his amended complaint. *See id.* at 3-4 (citing *Waldrip v. Waldrip*, 976 N.E.2d 102, 118-19 (Ind. Ct. App. 2012) (county governments are not liable for injuries arising from negligent jail administration); Ind. Code § 36-2-13-5(a)(7) (jail administration is left to the authority of county sheriffs)).

a tort claim notice on a government entity is a "procedural precedent which must be fulfilled before filing suit.").

Finally, Mr. Goff's tort claim notice does not state that a Terre Haute employee was responsible for his injuries. According to the tort claim notice, Mr. Goff was injured by a "police officer of Vigo County." Dkt. 35-7. The City of Terre Haute would have no reason to investigate a tort claim against an employee of a different political subdivision. Thus, even Mr. Goff had served this tort claim notice on the City of Terre Haute, it is doubtful that it would have satisfied the purpose of the ITCA's notice requirement.

There are no material factual disputes precluding summary judgment for the City of Terre Haute. *See Murphy*, 153 N.E.3d at 317 ("The question of compliance [with ITCA's notice provision] is not a question of fact for the jury but ultimately a legal determination to be made by the court.") Accordingly, the City of Terre Haute's motion for summary judgment is **GRANTED**.

### C. Tort Claims against Vigo County

Mr. Goff is proceeding on tort claims against Vigo County on the theory that Vigo County's police officers injured him during his arrest. *See* dkt. 16, p. 3. His other claims against Vigo County, which alleged that he was denied a liquid diet during his confinement at Vigo County Jail, were dismissed in the Order screening his amended complaint. *See id.* at 3-4 (citing *Waldrip v. Waldrip*, 976 N.E.2d 102, 118-19 (Ind. Ct. App. 2012) (county governments are not liable for injuries arising from negligent jail administration); Ind. Code § 36-2-13-5(a)(7) (jail administration is left to the authority of county sheriffs)).

Vigo County has moved for summary judgment on Mr. Goff's previously-dismissed county jail claims. Because Mr. Goff is not proceeding on any claims arising from his confinement at Vigo County Jail, that motion for summary judgment, dkt. [31], is **DENIED AS MOOT**.

The Court finds there is an independent basis to grant summary judgment for Vigo County on Mr. Goff's remaining tort claims arising from his arrest. There is no evidence that the officers responsible for his injuries were county employees. Pursuant to Federal Rule of Civil Procedure 56(f), Mr. Goff has **21 days from the issuance of this Order** to show cause why summary judgment should not be granted for Vigo County. Failure to meet this deadline will result in summary judgment for Vigo County and dismissal of the action without further warning.

## IV. Conclusion

The motion for summary judgment filed by the City of Terre Haute and Brian Bourbeau, dkt. [33], is **GRANTED**. Vigo County's motion for summary judgment, dkt. [31], is **DENIED AS MOOT**.

Pursuant to Federal Rule of Civil Procedure 56(f), Mr. Goff must show cause within **21 days of the issuance of this Order** why summary judgment should not be granted in favor of Vigo County for his tort claims arising from his arrest on July 17, 2019.

**SO ORDERED**.

Date: 9/30/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com

Mark Douglas Hassler
HUNT HASSLER & LORENZ, LLP
hassler@hkmlawfirm.com

Paul Jungers
JUNGERS LAW FIRM
paul.jungers@gmail.com